# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| LAVERNE WRIGHT, | ) | Case No. 04-42330 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| LAVERNE WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 04-5138 |
| | ) | |
| SALLIE MAE and EDUCATIONAL CREDIT MANAGEMENT CORPORATION, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

On July 14, 2004, the Debtor, LaVerne Wright, initiated the above-captioned adversary proceeding to determine the dischargeability of her student loan debt under 11 U.S.C. § 523(a)(8). On January 21, 2004, the court held a hearing to determine the issue central in this case, as it is to all § 523(a)(8) actions – that is, whether excepting the student loan debt from discharge would impose an undue hardship on the Debtor. At the hearing, the Debtor, who is not represented by counsel, was the only witness. Counsel for Defendant Educational Credit Management Corp. ("ECMC"), assignee of the loans previously held by Sallie Mae, cross-examined the Debtor and made a closing argument. The court took the matter under advisement and, upon consideration of the evidence and applicable law, finds that the Debtor will suffer an undue hardship unless her student loan debt is discharged. Accordingly, for the reasons stated below, the Debtor's student loan debt owed to ECMC will be discharged pursuant to 11 U.S.C. § 523(a)(8).

## I. DISCUSSION

From 1988 to 1994, the Debtor received approximately $44,000 in student loans to finance her education at the University of Missouri at Kansas City ("UMKC"). In 1996, she consolidated the loans with Sallie Mae. The original principal amount of the consolidation loan was $43,324.46. Since 1996, the Debtor has only made approximately $700 in payments on the loan. The current loan balance, including fees, capitalized interest, and accrued interest, is $102,144.99. Notwithstanding the actual amount due, counsel for ECMC announced at the outset of the hearing that ECMC would stipulate to the discharge of all amounts over $54,000, and would accept payments of $300.00 a month for 15 years to pay off the balance. Accordingly, the Court will use those figures in its determination of undue hardship.

Due to the fact intensive nature of the § 523(a)(8) undue hardship analysis, the remainder of the facts necessary to the Court's holding will be developed in the court's analysis below.

## II. ANALYSIS

Section 523(a)(8) of the Bankruptcy Code provides that educational or student loans are excepted from the general discharge provisions of the Bankruptcy Code "unless excepting such debt[s] from discharge ... will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8).[1] Congress did not define undue hardship; therefore, it has been left to the courts to decide, on a case-by-case basis, what constitutes undue hardship. The Eighth Circuit has adopted the "totality of the circumstances" test as set forth in *Andrews v. South Dakota Student Loan Assistance Corp.* (*In re Andrews*), 661 F.2d 702, 704 (8th Cir. 1981). Despite being denominated "totality of circumstances," the test actually focuses on three specific areas; although, the last area is, indeed, a catch-all category: (1)

---

[1] Section 523(a)(8) of the Bankruptcy code provides:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
　　(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for any obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents. 11 U.S.C. § 523(a)(8).

2

the debtor's past, current, and reasonably reliable future financial resources; (2) the reasonable necessary living expenses of the debtor and the debtor's dependents; and (3) any other relevant facts and circumstances unique to the particular bankruptcy case. *Long v. Educ. Credit Mgmt. Corp.* (*In re Long*), 322 F.3d 549, 554 (8th Cir. 2003). Essentially, undue hardship exists where the debtor's reasonable future financial resources will not allow the debtor to repay the student loan and maintain a minimal standard of living. *Id*. The burden is on the debtor to prove undue hardship by a preponderance of the evidence. *Andrews*, 661 F.2d at 704. In this case, despite ECMC's generous offer to write off close to one-half of the outstanding loan balance and the Debtor's income, the Court believes that the Debtor has established by a preponderance of the evidence that excepting her student loan from discharge will impose an undue hardship.

Applying the totality of the circumstances test to the instant case, the Court will examine each factor separately.

*1.     The Debtor's past, present, and reasonably reliable future financial resources*

Based on the most recent pay stub entered into evidence (for the period ending 12/31/04), the Court finds that the Debtor has a monthly gross income of $2,332.62 and a monthly net income of $1,757.90.[2] The only voluntary deductions made from her gross income are for life ($17.50), disability ($68.10), and cancer insurance ($64.08). At the hearing, ECMC suggested that the amounts expended for disability and cancer insurance might be excessive or at least duplicative, but the evidence adduced did not conclusively establish those allegations and, moreover, in light of the Debtor's family history of cancer,[3] the Court believes that the additional insurance is reasonable.

ECMC also questioned the deduction from the Debtor's gross income for retirement, but the Debtor offered credible evidence that this deduction is not voluntary and, thus, that money would not be available

---

[2] This figure is slightly more than what the Debtor listed in her schedules and slightly less than stated in the interrogatory answers provided to ECMC.

[3] The Debtor testified that her mother and two siblings have died of cancer.

3

to repay the student loan debt.[4]

Annualized, these figures indicate that the Debtor can expect a gross income of $31,789.92 in 2005. This represents a $3,361.00 increase from 2003 and a $5,292.00 increase from 2002. The Debtor testified that neither raises nor continued employment was guaranteed, but on the other hand no evidence was adduced to show that she was likely to lose her job in the immediate future. As is true for most public employees, the yearly raises approximate or lag behind inflation and therefore do not represent a true increase in salary. Therefore, the Court bases its determination of undue hardship on a projected continued income of $31,789.92.

Taken by itself, the Debtor's considerable income weighs significantly in favor of a finding that there is no undue hardship, especially in comparison to the majority of findings of undue hardship issuing from this Court, in which the debtors hover perilously close to the poverty line. This debtor is nowhere near the poverty line, which is approximately $9,000 for an individual in the Debtor's circumstances. But financial resources are only one of the factors used to determine undue hardship, and this Court does not believe that it is in society's interests or that it was the intent of Congress that debtors be forced to live in poverty just so they can repay their student loan debts. In light of the other factors present in this case, the finding of undue hardship should not be so surprising.

*2.   The reasonable, necessary living expenses of the debtor and the debtor's dependents*

The Court was presented with evidence of the Debtor's expenses from three sources – the Debtor's schedules, her interrogatory answers supplied to ECMC, and her testimony. Because this case pushes the envelope of what may be considered undue hardship, the Court calculated the Debtor's expenses by reviewing them in the light most favorable to ECMC and adopting the lowest reasonable amount adduced for each category of expense, with several exceptions which are noted. Using this methodology, the Court concludes that the Debtor has reasonable necessary living expenses of $1,578.00 a month. The chart below and notes that follow detail the Court's findings.

---

[4] All public school teachers in Missouri are required to participate in and contribute to the teacher and school employee retirements systems established pursuant to Chapter 169 of the Missouri Revised Statutes. The current contribution rate required of teachers is 7.5 percent of their salary.

4

| Expense | Schedule J | Answer to Interrogatory | Figures Used | Note |
|---|---|---|---|---|
| Rent | 475 | 475 | 475 | |
| Electricity and Heating | 275 | 220 | 220 | |
| Telephone | 65 | 50 | 50 | |
| Water and Sewer | 80 | 65 | 65 | |
| Home Maintenance | 50 | 50 | 50 | |
| Food | 400 | 400 | 300 | 1 |
| Meals Outside Home | 0 | 10 | 0 | |
| Clothing | 30 | 30 | 30 | |
| Laundry and Dry Cleaning | 48 | 60 | 48 | |
| Medical and Dental | 20 | 85 | 85 | 2 |
| Transportation | 60 | 50 | 50 | |
| Recreation | 10 | 15 | 15 | 3 |
| Charitable Contributions | 10 | 30 | 30 | 4 |
| Auto Insurance | 150 | 130 | 130 | |
| Health Insurance | 23 | 0 | 0 | 5 |
| Life Insurance | 0 | 23.10 | 0 | 5 |
| Disability Insurance | 33 | 0 | 0 | 5 |
| Personal Property Tax | 30 | 0 | 30 | 6 |
| Personal Items | 0 | 35 | 0 | |
| **TOTAL EXPENSES** | **$1,759** | **$1,728.10** | **$1,578** | |

Notes:

1. ECMC argued at trial that the Debtor's food budget was excessive for a single person not on a special diet and offered evidence that the USDA's estimated food budget under a "liberal" plan was only $235.90 a month. The Court agrees that $400.00 is excessive for a single person, but considering the Debtor's family history of cancer, it is reasonable that she would alter her diet to

      reduce the risk of cancer, and, frankly, healthier food tends to cost more. Therefore, the Court finds that the Debtor's reasonable food expense should be $300.00 a month.

2. The Debtor testified at trial that the increase in medical expenses is the result of the cost of medications she has been put on since she filed her schedules. That cost, in addition to the Court's belief that the amount listed in her interrogatory answer is reasonable (and more realistic), led to the adoption of the higher figure.

3. Whether the meager $5.00 increase in the recreation category is simply a result of the passage of time between her bankruptcy filing and answer to interrogatory, or an underestimation on her schedules, the $15.00 a month expense for recreation is very reasonable, especially in view of the fact that the Debtor, somewhat incredibly for these times, does not have cable television.

4. Although the $30.00 allotted for charitable contributions in her interrogatory answer represents a three-fold increase from the amount listed in her schedules, the amount is still reasonable and the Court is disinclined to criticize reasonable contributions to charity. Moreover, the $20.00 increase would not affect the Court's conclusion here.

5. With the exception of auto insurance, all of the insurance expenses listed in the Debtor's schedules or interrogatory answers are duplicative of deductions from her gross income.

6. The Debtor's omission in her Schedule J of a monthly set aside for annual personal property taxes appears to have been an oversight. At any rate, it is both reasonable and prudent to account for such an expense.

Subtracting the $1,578.00 in reasonable monthly expenses from the Debtor's monthly net income of $1,757.90 leaves $179.90 which, although not insignificant, is not enough to repay her student loans, even based on the generous offer of ECMC to write down the debt by almost 50% to $54,000.00 and accept payments of $300.00 a month for 15 years. Assuming that the Debtor could afford payments of $300.00 a month in the first instance, it is unlikely that she would be able to continue the payments for any long period of time, given her age (53) and health.

*3. Other relevant facts and circumstances unique to the particular bankruptcy case*

      The Court recognizes that $120.00 of "belt tightening" would yield enough disposable income in this case to enable the Debtor to make the $300.00 a month payment to ECMC. But as little as $120.00 may seem, the Debtor's current budget cannot accommodate it now, and she'll be even less likely to be able to afford it in the future – primarily because she will almost certainly need to replace or make major repairs to her car, a 10-year-old Nissan with over 100,000 miles on it. A modest $200.00 car payment would not have raised any eyebrows if it had been included in the Debtor's current expenses, and that

would have created a monthly deficit for the Debtor – a situation the Court hopes the Debtor does not find herself in in the future, but a situation the Court believes will likely occur if her student loan is not discharged. The Court does not know how the Debtor will replace her present car when that becomes necessary, for there is no indication that she has even the most meager of savings.

Additionally, there is no evidence that the Debtor is wasteful or spends her money on anything other than the necessities of life. She has lived in the same rented house for 15 years. She does not, apparently, have a cell phone, an item that many of us now consider a necessity. As previously noted, she does not have cable television, and the Court suspects she does not have a computer. She testified that she has not taken prescribed medications for her health conditions because she could not afford the drugs.

The Court is cognizant that the result in this case is partially a function of the large amount of student loan debt owed by the Debtor. If the loan were smaller and required payments of only $50.00 or $100.00 a month, the result here would likely have been different, inasmuch as the Debtor would have been able to afford a smaller payment (although the risk of a deficit would still loom when her car needs to be repaired or replaced). And the Court acknowledges the risk that this holding might be interpreted as condoning the unreasonable accumulation of more student loans in an attempt to tip the totality of circumstance test in their favor. But that simply does not appear to have been the Debtor's intent here, and it is unlikely that others would be so farsighted (and dishonest) in their financial planning. Furthermore, while the Court is hesitant to discourage Sallie Mae or ECMC from assisting students in need, Sallie Mae and ECMC must bear part of the risk of lending students large sums of money when repayment of those sums may have the effect demonstrated in this case.

Therefore, for the reasons stated above, the Court finds that excepting the Debtor's student loan debt to ECMC from discharge will impose an undue hardship on the Debtor.

### III. CONCLUSION

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

**ENTERED** this 17th day of February 2004.

/s/ Jerry W. Venters

United States Bankruptcy Judge

A copy of the foregoing mailed electronically or
conventionally to:
LaVerne Wright
N. Larry Bork